UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| WAYNE GARY MASCIARELLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 20-1206-JDT-cgc |
| | ) |
| OFFICER NEWHOUSE, ET AL., | ) |
| | ) |
| Defendants. | ) |

ORDER DENYING MOTION TO APPOINT COUNSEL,
DISMISSING COMPLAINT, AND GRANTING LEAVE TO AMEND

On September 14, 2020, Plaintiff Wayne Gary Masciarella, who is confined at the Northeast Correctional Complex in Mountain City, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, a motion to proceed *in forma pauperis*, and a motion to appoint counsel. (ECF Nos. 1, 2, & 3.) The Court granted pauper status and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) The complaint assert claims for failure to protect and deprivation of medical care arising from events that occurred at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee, where Masciarella was previously incarcerated. He names the following Defendants: Correctional Officer (C/O) First Name Unknown (FNU)

Newhouse; Lieutenant (Lt.) Kevin Scott; Lt. FNU Killingsworth; S/S Trina Neal;[1] Chief of Security FNU Ester; and CoreCivic, the private company that manages the WCF.[2]

Masciarella alleges that on September 21, 2019, at approximately 11:25 p.m., a fellow inmate "reached through his unsecured pie flap" and grabbed Defendant Newhouse's security keys off his belt. (ECF No. 1-1 at PageID 15.) Instead of calling for assistance in retrieving his keys, Newhouse "instantly" fled the area, leaving the pod unattended. (*Id.*) The inmate who stole the keys reached through his pie flap and unlocked his own cell door, then exited and began unlocking all the other cell doors. (*Id.*) "A small riot occur[red] of about 10 inmates." (*Id.*) Masciarella states an inmate unlocked his cell "against my wishes," and three other inmates forced Masciarella to exit "because they wanted to fight my cellmate." (*Id.*) While outside his cell, Masciarella was "attacked and beaten" by three inmates as Defendants Newhouse, Scott, Neal, and Ester, allegedly "sat in the control room and outside the pod and unit." (*Id.*) He alleges the assault finally stopped when another inmate "yelled 'stop your [sic] gonna kill him.'" (*Id.*) Twenty minutes later, Scott and C/O Taylor[3] "came in with pepperball guns and locked everybody down." (*Id.*)

---

[1] Masciarella does not explain what "S/S" stands for, but it is likely an abbreviation for Shift Sergeant or Shift Supervisor.

[2] The WCF is part of the Tennessee Department of Correction system, but "is . . . managed by CoreCivic, a private corrections management firm." *See* www.tn.gov/correction/sp-state-prison-list/whiteville-correctional-facility.html.

[3] Taylor is not named as a defendant.

2

After the incident, Masciarella asked Scott for medical attention, who in turn asked Nurse Drummit, who is not named as a defendant, to examine him. (*Id.*) Drummit did so through the cell door and allegedly told Scott that Masciarella needed to be escorted to medical for "stitches, x-rays, and further medical attention." (*Id.*) Because he was under close-custody status, Masciarella was required to be handcuffed and escorted by two staff members whenever he left his cell. (*Id.*) Scott went to retrieve handcuffs and to find another staff member to help with the transport to medical, but he never returned and "ignored all attempts to reach him on the radio by other C.O.s trying to reach him concerning an escort to medical." (*Id.*)

After shift change the following day, September 22, 2019, Masciarella "pleaded with" Killingsworth for medical care. (*Id.*) At Killingsworth's request, Nurse Powers, who also is not named as a defendant, evaluated Masciarella, again through his cell door. (*Id.*) Nurse Powers also told Killingsworth that Masciarella needed to be escorted to medical for stitches and x-rays "because I was in a bad condition and possibly had a broken nose and concussion" and "a large and deep laceration on my nose." (*Id.*) Despite Powers's recommendations, he "was again refused medical [care]." (*Id.*) Masciarella alleges he "constantly called over the emergency speaker for days trying to seek medical attention[.]  I layed in my cell for days bleeding from my nose and mouth with lump and cuts on my head so large and painful I couldn't lay my head down[.]" (*Id.* at PageID 14.) He further alleges that "every time I moved my head for a week I would feel dizzy and confused for a moment[,] a headache so bad I thought my brain was swelling up[.]  I was afraid to fall asleep afraid I wouldn't wake up." (*Id.*)

Masciarella states "it took me 4 days" to finally be escorted to medical, where a nurse there told him "there was nothing she could do medically" except make a "body sheet" record of his "4 day old injuries" and set him an appointment to see the doctor the next day, September 24, 2019. (*Id.* at PageID 16.) WCF personnel, however, failed to escort him to medical for that scheduled appointment. (*Id.*) On September 26, 2019, Masciarella was escorted to medical based on a sick-call he had placed three months prior regarding an ear infection. (*Id.*) At that time, the nurse spent less than ten minutes with Masciarella, supposedly because he demanded to see the doctor and complained about never receiving care for the injuries he sustained in the attack. (*Id.*) The nurse prescribed eardrops, but Masciarella alleges he "was still never treated for my injuries." (*Id.*)

Masciarella seeks "actual and punitive damages to be determined at trial." (ECF No. 1 at PageID 5.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court

4

accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Masciarella filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

5

To state a claim under § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

*Claims Against CoreCivic and Official Capacity Claims*:  Masciarella does not state a claim against CoreCivic or against the WCF Defendants in their official capacities.[4]  "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983."  *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)).  The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners.  *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018).  CoreCivic "cannot be held liable under a theory of respondeat superior."  *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).  To prevail on a § 1983 claim against CoreCivic, Masciarella "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights.  *Id.*

---

[4] Claims against the WCF Defendants in their official capacities are treated as claims against their employer, CoreCivic.

Masciarella does not allege the Defendants deprived him of constitutional rights based on an unconstitutional policy or custom of CoreCivic and therefore fails to state any claim against CoreCivic or against the WCF employee Defendants in their official capacities.

<u>*Claims for Failure to Protect*</u>: The Eighth Amendment protects prisoners from "cruel and unusual punishment," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), including the right to be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833); *see also Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (explaining that the Eighth Amendment imposes on prison officials "an affirmative duty to protect inmates from violence perpetrated by other prisoners"). Accordingly, the Constitution requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A failure-to-protect claim has objective and subjective components. For the objective prong, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 833). For the subjective prong, a plaintiff must allege that a prison official "acted with 'deliberate indifference' to inmate health or safety," *id*. (quoting *Farmer*, 511 U.S. at 834), meaning the official "kn[ew] of and disregard[ed]" the excessive risk of harm. *Id*. at 766-67 (quoting *Farmer*, 511 U.S. at 837); *see also Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). It is not enough that the official "should have perceived" a significant risk, "but did not."

7

*Farmer*, 511 U.S. at 838.  An official's state of mind must be "more blameworthy than negligence" before liability will attach.  *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer*, 511 U.S. at 835).  In analyzing the subjective component, courts must consider each defendant's knowledge individually.  *See Bishop*, 636 F.3d at 767 (citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 542 (6th Cir. 2008) and *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

As to the objective prong of his claim, Masciarella does not offer facts alleging that he was "incarcerated under conditions posing a substantial risk of serious harm" on September 21, 2019.  *See Bishop*, 636 F.3d at 766.  Certainly, being attacked without provocation in prison—such as Masciarella describes—is not "part of the penalty that criminal offenders pay for their offenses against society."  *See Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  However, the complaint states that Newhouse's security keys were spontaneously stolen by a nefarious fellow inmate.  The complaint does not allege any preexisting substantial risks of the theft or the ensuing harm to Masciarella.  For example, Masciarella does not suggest the theft occurred because of Newhouse's inattentiveness.  He also does not assert that keys had been stolen from officers in the same way before such that Newhouse or any other Defendant would have known there was a risk it would happen again and result in violence.  In sum, Masciarella does not sufficiently allege that conditions at the WCF posed a substantial risk of serious harm to him in September 2019.

As to the subjective prong, Masciarella does not offer facts showing that any Defendants subjectively knew of, and chose to be deliberately indifferent to, a significant

8

risk of harm to him from the incident. Although Newhouse, Scott, Neal, and Ester knew the "small riot" was happening because they observed it from the control room and/or adjacent area (*see* ECF No. 1-1 at PageID 15), Masciarella does not allege they knew or should have known three of the inmate-rioters would specifically attack him in the process. Indeed, he insinuates that Newhouse fled just before the altercation started in the interests of self-preservation (*see id.*) — not in deliberate indifference to the risk Masciarella would be harmed. In fact, the complaint may be reasonably construed as suggesting that Newhouse departed in order to alert other WCF personnel of the security breach. Additionally, merely because the Defendants "kn[ew] of" the incident from the control room and nearby area does not demonstrate they were "disregard[ing] it." *See Bishop*, 636 F.3d at 766-67 (quoting *Farmer*, 511 U.S. at 837). To the contrary, the complaint's allegation that officers entered the pod with chemical agents to lock down the area (ECF No. 1-1 at PageID 15 ("pepperball guns")) suggests the Defendants were mobilizing to quell the disturbance, not merely watching it unfold. Furthermore, Masciarella does not allege that intervention was safely possible before officers arrived with the chemical agents. The Court is not in the position to second-guess the split-second judgment calls of correctional officers on the rapidly-evolving, fast-paced, and emotionally-charged scene of an inmate altercation.[5]

---

[5] *See, e.g., Graham v. Connor*, 490 U.S. 386, 396 (1989)) (noting, in the Fourth Amendment context, that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.")

In sum, there is no plausible allegation in the complaint that any specific Defendant particularly knew of, encouraged, or turned a blind eye to a significant risk Masciarella would be harmed during the incident. Masciarella thus fails to state an Eighth Amendment claim for failure to protect against any Defendant.

*Claims for Denial of Medical Care*: The Court also reviews claims regarding the denial of medical care under the Eighth Amendment. Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" . . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

The objective component of an Eighth Amendment medical care claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

The subjective component again requires a showing that prison officials acted with deliberate indifference. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-03; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). Prison officials cannot be found

liable under the Eighth Amendment unless they subjectively know of an excessive risk of harm to an inmate's health or safety and disregard it. *Farmer*, 511 U.S. at 837.

As to the objective component, the Court will presume, only for purposes of this order, that Masciarella's allegations of black and swollen eyes, lumps and lacerations on his head and face, a split lip, broken nose, "deep lacerations on my nose and lip so deep it needed stitches," and a headache with dizziness and confusion that lasted a week amounted to an objectively serious medical need. (*See* ECF No. 1-1 at PageID 15; ECF No. 1 at PageID 5.)

As to the subjective component, Masciarella does not demonstrate that either Scott or Killingsworth acted with unconstitutional "deliberate indifference" to his injuries. Rather, the circumstances outlined in his complaint portray a fast-paced situation that posed danger to both WCF staff and inmates; even so, Scott summoned a nurse to evaluate Masciarella. Though Nurse Drummit allegedly told Scott that Masciarella needed medical attention as soon as possible, there is no allegation Scott was aware that failure to immediately provide such medical care would pose a substantial risk of serious harm. There also is no allegation that Scott's failure to return to transport Masciarella to the medical department was due to deliberate indifference rather than to negligence or the requirements of his other duties with regard to the ongoing situation. By Masciarella's own admission, the WCF staff was busy implementing safety lockdowns and security procedures.

Similarly, notwithstanding that Nurse Powers told Killingsworth the next morning that Masciarella needed medical attention as soon as possible, there is no allegation

Killingsworth was aware that failure to provide immediate medical care would pose an excessive risk of harm.  Masciarella also does not assert that Killingsworth actually refused to take him to medical or that, if he did specifically refuse, whether he gave any reason for the refusal.  Nor does Masciarella state that Killingsworth agreed to take him for medical treatment but ultimately did not do so.  Masciarella appears to merely presume, from the fact Killingsworth did not act immediately, that he was acting unconstitutionally. [6]

Without more, Masciarella's dissatisfaction with the timing and nature of his medical attention is insufficient to plausibly infer that Scott or Killingsworth, or any other WCF employee, denied him medical care with a "sufficiently culpable state of mind."  Therefore, Masciarella fails to state an Eighth Amendment claim for lack of medical care.

*Motion to Appoint Counsel*:  In Masciarella's motion for appointment of counsel, he states that he needs an attorney because he is indigent.  (ECF No. 3 at PageID 48.)  Pursuant to 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel."  However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right."  *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs

---

[6] Masciarella's allegations as to when he actually was taken to the medical department are not consistent.  He alleges "it took me 4 days to finally get escorted to medical." (*Id.* at PageID 16.)  He also alleges, however, that when he was "finally" taken to medical the nurse could do nothing for his "4 day old injuries" but made him an appointment to see the doctor the "next day" on September 24, 2019.  (*Id.*)  So it appears he was actually taken to medical on September 23rd.  That would have been less than forty-eight hours after the attack and his request to Scott for medical treatment, which allegedly occurred just before midnight on September 21st, and approximately twenty-four hours after requesting medical attention from Killingsworth on the morning of September 22nd.  (*Id.* at PageID 14-15.)

were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . ."). Appointment of counsel is "a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted).

The mere fact that Masciarella cannot afford to hire an attorney is not the type of exceptional circumstance that warrants the appointment of counsel in a civil case. The motion for appointment of counsel is therefore DENIED at this time. Masciarella may re-file the motion in the future if this case ultimately is allowed to proceed.

<u>Opportunity to Amend</u>: The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds Masciarella should be given the opportunity to amend his complaint.

*Conclusion*:  In conclusion, the Court DISMISSES Masciarella's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A (b)(1).  Leave to amend, however, is GRANTED.

Any amended complaint must be filed within twenty-one days after the date of this order, **on or before April 29, 2021**.  Masciarella is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleading.  The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count.  If Masciarella fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

                                             s/ **James D. Todd**
                                             JAMES D. TODD
                                             UNITED STATES DISTRICT JUDGE